# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## ASHEVILLE DIVISION
## CIVIL ACTION NO. 1:17-CV-00001-MR-DLH

| | |
|---|---|
| BRYAN CURRY, TERRAN BROOKS, JERMAINE WILLIS, and BRIAN HOPPER on behalf of themselves and all others similarly situated | ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| SCHLETTER INC., | ) ) |
| Defendant. | ) ) ) |

## DEFENDANT SCHLETTER, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT

Defendant Schletter, Inc. ("Schletter"), pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby submits its Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Amended Complaint.

## I. PRELIMINARY STATEMENT

As alleged in Plaintiffs' Amended Complaint, Schletter was the victim of an e-mail "phishing" scam which resulted in W-2 information being disclosed to a cyber-criminal posing as company management. The Plaintiffs, employees whose W-2 information was disclosed, seek to hold Schletter a fellow victim liable for the data breach. However, Plaintiffs' cannot sustain any of their claims as a matter of law for the following reasons: (1) Plaintiffs' negligence claim is barred by North Carolina's economic loss rule; (2) Plaintiffs' invasion of privacy claim fails as it lacks the requisite "intrusion" and "intent" elements necessary to sustain that claim; (3) Plaintiffs'

claim for breach of implied contract fails as Plaintiffs have failed to allege facts sufficient to establish assent to an implied contract or consideration; (4) Plaintiffs' claim for breach of fiduciary duty fails as North Carolina law is clear that there is no fiduciary relationship in the employment context; (5) Plaintiffs' claim for violation of North Carolina's Identity Theft Protection Act ("ITPA") fails as the violation complained of is inapplicable to the facts plead in this case and Plaintiffs have failed to plead the requisite intent required by the Act; and (6) Plaintiffs' claim for violation of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTP") fails because: the conduct complained of was not in or affecting commerce; there has not been a violation of the ITPA, the UDTP does not apply to employment or contract disputes, and Plaintiffs have failed to plead any unfair and deceptive conduct by Schletter.

## II. STANDARD APPLICABLE TO MOTION TO DISMISS

A motion filed pursuant to 12(b)(6) of the Federal Rules of Civil Procedure challenges the legal sufficiency of a complaint. *Jordan v. Alternatives Res. Corp.*, 458 F.3d 332, 338 (4th Cir. 2006); *Francis v. Giacomelli,* 588 F.3d 186, 192 (4th Cir. 2009). In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court held that a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. 544, 554 (2007) (internal quotation marks omitted). Rule 12(b)(6) protects against meritless litigation by requiring sufficient factual allegations "to raise a right to relief above the speculative level" so as to "nudge[ ] the[ ] claims across the line from conceivable to plausible." *Twombly*, 500 U.S. at 555, 570; *see lqbal*, 556 U.S. at 662. In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Court further established a two-part approach to analyze a motion to dismiss under Rule 12(b)(6). First, the Court observed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. at 678. Second, the Court emphasized,

"only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. Here, Plaintiffs' factual allegations, even if true, fail to state a claim as to any of their asserted causes of action.

## III.   ARGUMENT

### A.   North Carolina's Economic Loss Rule Bars Plaintiffs' Negligence Claim as a Matter of Law

The economic loss rule prohibits recovery for economic losses in tort when a contract exists. *Kelly v. Georgia-Pac, LLC*, 671 F. Supp. 2d 785, 791 (E.D.N.C. 2009) (applying North Carolina Law). Plaintiffs' allegations and their claim for breach of contract make it abundantly clear that they provided their personal information to Schletter as part of their contractual employment relationship stating: "Plaintiffs and Class Members were required to provide their PII including names, addresses, Social Security numbers, and other personal information to Schletter as a condition of their employment" and "Implicit in the employment agreement between Schletter and its employees…" (Amended Compl.¶¶ 134-135.) As noted by the Fourth Circuit: "North Carolina courts have … recognized that at-will employment relationships are contractual." *McLean v. Patten Communities, Inc.*, 332 F. 3d 714, 719 (4th Cir. 2003); *Lee v. Norfolk S. Ry. Co.*, 912 F. Supp. 2d 375, 377 (W.D.N.C. 2012). Plaintiffs' negligence claims thus fail because their claims arise from a contractual relationship, and Plaintiffs allege only economic losses. Indeed, North Carolina courts have extended the economic loss doctrine to bar the recovery of purely economic losses in employer-employee disputes. *See Superior Performers, Inc. v. Meaike*, No. 1:13-CV-1149, 2014 WL 5819826, at *7 (M.D.N.C. Nov. 10, 2014) (applying North Carolina law and rejecting claim based on employment agreement under the economic loss rule); *Akzo Nobel Coatings, Inc. v. Rogers*, No. 11 CVS 3013, 2011 WL 5316772, at *17 (N.C. Super. Nov. 3, 2011) (holding that economic loss rule bars tort claim in employment dispute).

3

Numerous courts around the country have dismissed negligence claims for data breaches like the one alleged in this case based on the economic loss rule. *See Banknorth N.A. v. BJ's Wholesale,* 442 F. Supp. 2d 206, 211-14 (M.D. Pa. 2006) (economic loss doctrine barred recovery in negligence of damages after third parties allegedly hacked into a computer file maintained by the defendants); *In re TJX,* F.Supp.2d 83, 90-91 (D. Mass. 2007); *Pennsylvania State Employees Credit Union v. Fifth Third Bank,* 398 F.Supp.2d 317, 326-30 (M.D. Pa. 2005); *see also In re Michaels Stores Pin Pad Litig.,* 830 F.Supp.2d 518, 531 (N.D. Ill. 2011) (Illinois Law) (collecting data breach cases and reaching the same result); *see, e.g., Sony II,* 996 F. Supp. 2d at 966-73 (Dismissing negligence claim under economic loss doctrine); *In re Target Corp. Customer Data Sec. Breach Litig.,* 2014 WL 7192478, at *16 (D. Minn. Dec. 18, 2014); *In re Michaels Stores Pin Pad Litig., 830* F. Supp. 2d 518, 528-31 (M.D. Ill. 2011); *Sovereign Bank v. BJ's Wholesale Club, Inc.,* 533 F.3d 162, 175-78 (3d Cir. 2008).

In the recent case of *Enslin v. The Coca-Cola Co.*, 136 F. Supp. 3d 654, 673 (E.D. Pa. 2015), the federal district court considered a negligence claim brought by current and former employees related to their employer's disclosure of employee personal information. In applying the economic loss doctrine to dismiss the negligence claim, the *Enslin* court found that the "[p]laintiff does not assert that he has sustained any injury other than economic losses." *Id.* at 672. The same applies here where Plaintiffs' damages relating to their negligence claim are economic. (Amended Complaint ¶ 122) ("Out-of-pocket expenses associated with addressing false tax returns filed; current and future out-of-pocket costs in connection with preparing and filing tax returns; loss of delay of tax refunds as a result of fraudulently filed tax returns; out-of-pocket expenses associated with procuring robust identity protection and restoration services; increased risk of future identity theft and fraud, and the costs associated therewith; and time spent monitoring,

addressing and correcting the current and future consequences of the Data Disclosure.") Accordingly, Plaintiffs' negligence claim is barred by the economic loss rule and thereby fails as a matter of law.

**B.     Plaintiffs' Claim for Invasion of Privacy Fails as a Matter of Law**

North Carolina recognizes two distinct invasion of privacy torts: (1) appropriation of a person's name or likeness and (2) intrusion upon seclusion. *Hall v. Post*, 323 N.C. 259, 263, 372 S.E.2d 711, 713 (1988); *see also Renwick v. News & Observer Publ'g Co.*, 310 N.C. 312, 320, 312 S.E.2d 405, 411 (N.C. 1984). Plaintiffs do not allege an appropriation of Plaintiffs' names or likeness. Accordingly, only the intrusion upon seclusion tort claim will be discussed below.

1.    <u>Plaintiffs' Invasion of Privacy Claim Fails as Plaintiffs Have Not Alleged an Intrusion</u>

The tort of invasion of privacy by intrusion in North Carolina is defined as:

> the intentional intrusion "physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns … [where] the intrusion would be highly offensive to a reasonable person." The kinds of intrusions that have been recognized under this tort include "physically invading a person's home or other private place, eavesdropping by a wiretapping or microphones, peering through windows, persistent telephoning, unauthorized prying into a bank account, and opening personal mail of another.

*Toomer*, 155 N.C. App. at 479-80, 574 S.E.2d at 90 (quoting *Miller v. Brooks*, 123 N.C. App. 20, 26, 472 S.E.2d 350, 354 (1996), and *Hall v. Post*, 85 N.C. App. 611, 615, 355 S.E.2d 819, 823 (1987), *rev'd on other grounds*, 323 N.C. 259, 372 S.E.2d 711 (1988)). Thus, "[g]enerally, there must be a physical or sensory intrusion or an unauthorized prying into confidential personal records to support a claim for invasion of privacy by intrusion." *Broughton v. McClatchy Newspaper, Inc.*, 161 N.C. App. 20, 29, 588 S.E.2d 20, 27 (2003) (citing *Burgess v. Busby*, 142 N.C. App. 393, 544 S.E.2d 4 (2001)). No such allegations of intrusion have been plead in this

case. Rather, Plaintiffs acknowledge that they gave the information to Schletter. (Amended Compl. ¶ 49, 105, 134.)

Where a defendant properly receives information, there is no intrusion even when the information is later "published." *See Alexander v. City of Greensboro*, 762 F. Supp. 2d 764, 816 (M.D.N.C. 2011) (interpreting North Carolina law and holding that "[b]ecause [defendant] properly received this information, her disclosure of it did not constitute intrusion into seclusion, so Plaintiffs cannot rely upon this disclosure for their invasion of privacy claim."); *see also Bradley v. Ramsey*, 329 F. Supp. 2d 617, 628 (W.D.N.C. 2004) (dismissing an intrusion on seclusion claim "to the extent that [it] is based on… disclosure."); *Hall v. Post*, 85 N.C. App. 610 (1987), *rev'd on other grounds*, 323 N.C. 259, 372 S.E.2d 711 (1988) (no intrusion when information not wrongfully obtained); *Roughton v. McClatchy Newspaper, Inc*., 161 N.C. App. 20, 588 S.E.2d 20 (2003) (no intrusion where personal information obtained from public sources).

In *Alexander*, police officers brought a claim for intrusion upon seclusion where a city council member learned about a settlement involving the officers and then passed the information on to a reporter. *See Alexander*, 762 F. Supp. 2d at 816. The Court held that no "intrusion" occurred because the subsequent publication of the information did not constitute an "intrusion" and the officers did not allege that the council member improperly gained access to the information. *Id*. at 816. The same holds true here as Plaintiffs do not allege that Schletter improperly gained access to their W-2 information. Like in *Alexander*, an alleged subsequent "publication" after permissive access does not constitute intrusion. In this case, Schletter gained access to Plaintiffs' social security numbers because Plaintiffs voluntarily gave it to them and because federal and state laws require Schletter to collect it. Because Plaintiffs have not plead an "intrusion," Plaintiffs' invasion-of-privacy claim should be dismissed as a matter of law.

6

2.      Plaintiffs Invasion of Privacy Claim Fails as Plaintiffs Have Failed to Plead
        The Requisite Intent

Even if there were an "intrusion" - which there was not – Plaintiffs' invasion of privacy claim still fails as Plaintiffs fail to adequately plead intent.  Although North Carolina courts have not squarely defined the "intent" requirement, cases from other jurisdictions find intent where an actor "believes, or is substantially certain, that he lacks the necessary legal or personal permission to commit the intrusive act." *O'Donnell*, 891 F.2d 1079, 1083 (3d Cir. 1989) (citing Restatement (Second) of Torts, § 652B (Am. Law Inst. 1975)); *see* also *In re Nickelodeon Consumer Privacy Litig.*, No. 15-1441, 2016 WL 3513782, at *23 & n. 194 (3d Cir. June 27, 2016) (quoting *O'Donnell* and reasoning that the relevant state supreme court would "likely adopt the definition of intrusion upon seclusion included in the Second Restatement of Torts"); *Fletcher v. Price Chopper Foods of Trumann, Inc.*, 220 F. 3d 871, 876 (8th Cir. 2000) (quoting *O'Donnell*); *Dubbs v. Head State, Inc.*, 336 F. 3d 1194, 1221 (10th Cir. 2003) (quoting *Fletcher* and reasoning that "[t]his analysis originates in an interpretation of Pennsylvania law, but we find its analysis…persuasive and we believe the [state] Supreme Court would as well"); *see also Miller v. Brooks*, 123 N.C. App. 20, 25, 472 S.E.2d 350, 354 (N.C. App. 1996) (holding that intrusion upon seclusion is actionable in North Carolina and citing the Second Restatement of Torts).  Here, Plaintiffs in their Complaint admit that the phishing scam was meant to trick Schletter into sharing data with someone who would be permitted to see it. (Amended Compl. ¶¶ 2, 4, 21, 108, 117, and 153.)  Plaintiffs' Complaint fails to allege any facts showing that Schletter intended to cause an "unauthorized intrusion" or believed such an intrusion was "substantially certain."   In fact, Plaintiffs' allegations are to the contrary.

Because Plaintiffs have failed to plead an "intrusion" or the requisite "intent" Plaintiffs' claim for invasion of privacy should be dismissed as a matter of law.

**C.     Plaintiffs' Claim for Breach of Implied Contract Fails**

      1.     <u>Schletter Has Not Assented to an Implied Contract</u>

Plaintiffs have failed to plead the existence of an implied contract for Schletter to maintain employee personal information securely as Plaintiffs allege. (Amended Compl. ¶ 135.)  In North Carolina, implied-in-fact contracts are enforceable "as long as mutual assent is manifest from the parties' conduct," and otherwise meets the requirements of a contract including consideration. *Celanese Acetate, LLC v. Lexcor, Ltd*., 632 F. Supp. 2d 544, 550 (W.D.N.C. 2009)  As stated by the Supreme Court of North Carolina:

> [a] 'contract implied in fact,'… arises where the intention of the parties is not expressed, but an agreement in fact, creating an obligation, is implied or presumed from their acts, or, as it has been otherwise stated, where there are circumstances which, according to the ordinary course of dealing and the common understanding of men, show a mutual intent to contract.

*Snyder v. Freeman*, 300 N.C. 204, 217, 266 S.E.2d 593, 602 (1980) (emphasis added) (quoting 17 C.J.S. Contracts 4b (1963)).  Accordingly, under North Carolina law, whether an implied contract exists or not is to be determined from an objective review of the parties' actions rather than the subjective beliefs of a party.  *See Id.; see also Morris Speizman Co. v. Williamson,* 12 N.C. App. 297, 302, 183 S.E.2d 248, 251 (1971) (citing 13 Williston on Contracts, 3rd Ed., s 1536) ("In examining the language and actions of the parties in order to determine if a binding contract resulted, the test to be applied is objective and not subjective").  "The essence of any contract is the mutual assent of both parties to the terms of the agreement so as to establish a meeting of the minds."  *Id*. (citing *Pike v. Wachovia Bank & Trust Co*., 274 N.C. 1, 161 S.E.2d 453 (1968) (emphasis added)).  Aside from the method of proving mutual assent, there is no difference in legal effect between express contracts and implied-in-fact contracts.  *Id*. Mutual assent is ordinarily established through the mechanisms of offer and acceptance.  *Id*.  However, in regards to contracts

implied-in-fact "one looks not to some express agreement, but to the *actions* of the parties showing an ***implied offer and acceptance.***" *Lake Toxaway Cmty. Ass'n, Inc. v. RYF Enterprises, LLC*, 226 N.C. App. 483, 488, 742 S.E.2d 555, 560 (2013) (emphasis added) (citing *Revels v. Miss Am. Org.*, 182 N.C. App. 334, 337, 641 S.E.2d 721, 724 (2007)). There is no conduct or course of dealing alleged in Plaintiffs' Complaint which could plausibly constitute either an offer or acceptance concerning safeguarding of information.

In *Keister v. Nat'l Council of Young Men's Christian Ass'n of U.S.*, the North Carolina Business Court found that the plaintiffs failed to allege any "meeting of the minds," or "mutual assent" between the plaintiffs and the defendant. *Keister v. Nat'l Council of Young Men's Christian Ass'n of U.S.*, No. 12 CVS 1137, 2013 WL 3864583, at *8 (N.C. Super. July 18, 2013). In *Keister*, the plaintiffs claimed that the defendant, Young Men's Christian Association of the United States' ("Y-USA") promotional statements, which were given to the plaintiffs, became the basis of the bargain for the plaintiffs' membership agreement with Y-USA. *Id.* at 7. The North Carolina Business Court stressed that implied-in-fact contracts require an offer and acceptance. The court found that the plaintiffs failed to allege any facts to the effect that Y-USA's marketing campaign and promotional statements constituted an implied offer to contract directly with the plaintiffs. *Id.* at 8. Further, the court noted that even if it read Y-USA's marketing materials as an offer, the plaintiffs did not allege an acceptance or consideration for Y-USA's "offer" sufficient to imply mutual assent between the parties. *Id.* As such, the court concluded that the plaintiffs failed to state a claim for breach of an implied-in-fact contract. *Id.*

In *Lake Toxaway Cmty. Ass'n, Inc. v. RYF Enterprises,* The North Carolina Court of Appeals found that an implied contract in fact existed between the parties, but only as a result of the defendant's acceptance of the benefits provided by the plaintiff. *Lake Toxaway Cmty. Ass'n,*

*Inc. v. RYF Enterprises, LLC*, 226 N.C. App. 483, 490, 742 S.E.2d 555, 560 (2013).  In *Lake Toxaway*, the plaintiff was the property owners association for the development. *Id*. at 486, 742 S.E.2d at 558.  The plaintiff delivered an invoice to the defendant, demanding the defendant pay its pro-rata share of the costs of maintaining the roads and the lake, which the defendant refused to pay. *Id*.  The trial court found that a contract implied in fact had been created by the actions of the plaintiff and the defendant. *Id*.  The North Carolina Court of Appeals agreed and found that "implicit in defendant's acceptance of the benefits of using the roads and the lake, was an agreement to pay for the upkeep, maintenance and repair of the roads and lake." *Id*. at 490, 742 S.E.2d at 560.  Therefore, the ruling in *Lake Toxaway* was based upon the defendant's acceptance of benefits and, not upon the mere existence of those benefits.

Here, Plaintiffs allege they entered into an implied contract with Schletter whom had "an implied duty to reasonably safeguard and protect the social security numbers of Plaintiffs and class members from unauthorized disclosure or uses." (Amended Compl. ¶ 137).  First, Schletter does not owe a duty to Plaintiffs' implied or otherwise and Plaintiffs have not specified one recognized by North Carolina law. (*See* Section D *infra*).  Second, Plaintiffs' Complaint is devoid of any factual allegations showing a mutual assent (offer and acceptance) to safeguard Plaintiffs' information.  As noted above, for a court to find a contract implied-in-fact, the parties must demonstrate mutual assent through the "actions of the parties showing an implied offer and acceptance."  Here, Plaintiffs' Complaint fails to allege any actions whatsoever of either party establishing an implied offer and acceptance concerning data security.  Nor is there any allegation that Schletter received any benefit or consideration for fulfilling its duty to collect information as required by federal and state law.  Plaintiffs' conclusory allegations do nothing to establish that

Schletter intended to enter into a contact to safeguard Plaintiffs' information much less a contract that obligates Schletter not to be a victim of cyber-crime.

In similar data breach cases, courts have routinely dismissed implied-in-fact contract claims for failure to show a mutual assent as to the additional terms proposed by the Plaintiffs. *See e.g. Frezza v. Google, Inc*., No. 12-CV-00237-RMW, 2012 WL 5877587, at *5 (N.D. Cal. Nov. 20, 2012) (dismissing Plaintiffs' breach of implied contract claim where Plaintiffs' did not "sufficiently plead that Google agreed to and then breached a specific obligation"); *Bank v. Ikon Office Sols., Inc*., No. 3:10-CV-1067 WWE, 2011 WL 2633658, at *3 (D. Conn. July 5, 2011) (finding that "[b]cause the amended complaint [did] not allege any facts establishing the existence of a contract regarding data security, plaintiff's claims of breach of contract and breach of implied contract fail."); *See also Krottner v. Starbucks Corp*., 406 F. App'x 129, 131 (9th Cir. 2010) (holding that Appellants did not adequately plead the existence of an implied contract because the facts alleged failed to demonstrate a mutual intention as to any specific offer to encrypt or otherwise protect Plaintiffs' personal data). In *Frezza v. Google Inc.*, the plaintiffs alleged a contractual relationship was created with Defendant Google once plaintiffs entered their credit card information into Google's billing system. *Frezza* at 3. The Court held that: "Contracts must be objectively construed and are not to be interpreted based upon the subjective belief or understanding of a party." *Id.* at 3; *Wolf v. Walt Disney Pictures & Television*, 162 Cal. App. 4th 1107, 1126, 76 Cal. Rptr.3d 585 (2008). The plaintiffs argued that the "implied contract" mandated Google handle the plaintiffs' credit card information responsibly. *Id*. However, the court found that plaintiffs failed to plead that "Google agreed to and then breached a specific obligation." *Id*. The court found that no facts were alleged to support an inference that Google even contemplated, much less agreed to meet the standards plaintiff wished to impose. *Id*. Such is the

case here.  Plaintiffs have not alleged any acts or communications in their Complaint which could plausibly give rise to an implied-in-fact contract for Schletter to safeguard data, much less that Schletter agreed to, without limitation: employee education and training on confidentiality protocols, secure file transfer protocols, implementing companywide practices regarding the request or transfer of information, implementing an e-mail validation system, and utilizing an e-mail authentication system. (Amended Compl. ¶¶ 61, 62, 66).  Accordingly, the Court should dismiss Plaintiffs' claim for breach of implied contract as a matter of law.

2. <u>Plaintiffs' Implied Contract Fails for Lack of Consideration Pursuant to the Pre Existing Duty Rule</u>

Contracts, whether express or implied, require consideration in order to be enforceable. *Duncan v. Duncan*, 147 N.C. App. 152, 553 S.E.2d 925, 926 (N.C. Ct. App. 2001). "Consideration can be found in benefit to the promisor or detriment to the promisee." *NRC Golf Course, LLC v. JMR Golf, LLC*, 222 N.C. App. 492, 502, 731 S.E.2d 474, 481 (N.C. Ct. App. 2001). "Under the pre-existing duty rule," 'a promise to perform an act which [the] promisor is already bound to perform is insufficient consideration for a promise by the adverse party.'" *Midland Fire Prot., Inc. v. Clancy & Theys Const. Co*., 175 N.C. App. 420, 623 S.E.2d 369 (N.C. Ct. App. 2006) (quoting *Sinclair v. Travis,* 231 N.C. 345, 352, 57 S.E.2d 394, 400 (N.C. 1950). "If a return promise is given in return for a promise to perform a pre-existing duty, there is no new consideration, and no new agreement." *Id*. (citation and quotation omitted).  Plaintiffs' in their Complaint allege that they were required to provide their personal information to Schletter as a condition of employment (Amended Compl. ¶ 134).  That is true.  However, Schletter is required by both federal and state law to collect that information before its employees can legally work or be paid in the United States. Similarly, Plaintiffs had a statutory obligation to provide their personal

information to Schletter if they wanted to work.[1]  In other words, Schletter was legally obligated to obtain Plaintiffs' personal information, and Plaintiffs' were legally obligated to provide their personal information to Schletter.  Because Plaintiffs had a pre-existing legal duty to provide their personal information to Schletter, Schletter did not receive any consideration to support an alleged "implied contract" to safeguard Plaintiffs' personal information pursuant to North Carolina's pre-existing duty rule.

### D.    Plaintiffs' Claim for Breach of Fiduciary Duty Fails as Schletter and Plaintiffs Do Not Have a Fiduciary Relationship

A claim for breach of fiduciary duty requires the existence of a fiduciary relationship. *White v. Consol. Planning, Inc.*, 166 N.C. App. 283, 293, 603 S.E.2d 147, 155 (2004). The North Carolina Supreme has explained "[i]n general terms, a fiduciary relation is said to exist '[w]herever confidence on one side results in superiority and influence on the other side; where a special confidence is reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing the confidence.'" *Id.* (quoting *Vail v. Vail,* 233 N.C. 109, 114, 63 S.E.2d 202, 206 (1951)); *see also Abbitt v. Gregory*, 201 N.C. 577, 578 (1931) (A fiduciary relationship exists where "there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence."). No such special relationship exists between Schletter and Plaintiffs.

North Carolina law holds that a fiduciary duty does not exist between an employer and employee because the relationship between an employer and employee is not one of those regarded as confidential.  *Dalton v. Camp*, 353 N.C. 647, 652 548 S.E.2d 704, 708 (2001); *Duke Energy*

---

[1] Internal Revenue Code § 3102 and related regulations requires employers to obtain employee Social Security numbers and to enter them on forms W-2 and W-4.  The federal Immigration Control and Reform Act of 1986 (8 U.S.C. 1101 et seq) requires employees to provide personal information to employers such as dates of birth etc.; North Carolina (N.C.G.S. § 64-75 et seq) requires employers to obtain employee social security numbers on the federal I-9 form.

*Int'l., L.L.C. v. Napoli*, 748 F. Supp. 2d 656, 667 (applying North Carolina law, the Court stated that "[u]nder the general rule, 'the relation of employer and employee is not one of those regarded as confidential'").

Plaintiffs' Complaint lacks any facts or allegations that would establish the existence of a fiduciary relationship. Instead, the Complaint simply makes the conclusory allegation that: "Schletter was a fiduciary, as an employer created by its undertaking to act primarily for the benefit of its employees, including Plaintiffs and class members, in a matter connected with employment." (Amended Compl. ¶ 145.) Plaintiffs' bald assertion that the employment relationships itself creates a fiduciary duty without more misrepresents well-established North Carolina law and is insufficient to show that Plaintiff and Defendant were in a fiduciary relationship. As stated recently by District Court Judge Richard L. Voorhees in *Curtis v. Café Enterprises, Inc.*, 5:15-CV-00032 (U.S.D.C. E.D.N.C. November 21, 2016) in dismissing a claim against an employee alleging breach of fiduciary duty against his employer: "The parameters of a fiduciary relationship have been specifically limited in the context of employment situations, and 'the relation of employer and employee is not one of those regarded as confidential.'"

Because Schletter is not in a fiduciary relationship with its current and former employees, Plaintiffs' breach of fiduciary duty claim fails as a matter of law.

**E.      Plaintiffs' Claim for Violation of North Carolina's Identity Theft Protection Act Fails**

North Carolina's Identity Theft Protection Act ("ITPA") prohibits the disclosure of social security numbers and governs how a company must respond to a data breach. Plaintiffs' do not allege that Schletter failed to properly respond to the data breach once it was discovered. Rather, Plaintiffs allege that: "Schletter intentionally communicated or otherwise made available to unknown third parties the Social Security numbers of Plaintiffs and class members in violation of

N.C. Gen. Stat. § 75-62(a)(1). (Amended Compl. ¶ 151.)   The relevant provision of the Act provides that a business may not…"(1) Intentionally communicate or otherwise make available to the general public an individual's social security number." (NCGS § 75-62(1)).

1.      Section (a)1 of the ITPA is Inapplicable to the Allegations Plead in this Case

Plaintiffs' in their Complaint acknowledge and allege that Schletter was subject to a "phishing" or "scam" e-mail scheme resulting in the disclosure of Plaintiffs' W-2 information. (Amended Compl. ¶ 2.)  Plaintiffs' also accurately allege that "phishing e-mails" are where a "cyber criminal sends e-mails that appear to have initiated from the CEO or other top level executive at the target company."  (Amended Compl. ¶¶ 57-58.)  Plaintiffs then go on to allege that by Schletter falling victim to a phishing scam it has violated the ITPA.  However, Plaintiffs fail to recognize that falling victim to a phishing scam is inapplicable to section (a) of the ITPA. The ITPA at NCGS § 75-62(b)(2) expressly provides:

(b)      Subsection (a) of this section shall not apply in the following instances:

(2)      "to the collection, use, or release of a social security number for internal verification or administrative purposes."

Id.  As Plaintiffs allege, Schletter was scammed into believing it was sending an e-mail internally to company management.  Thus Section (b)(2) renders Section (a) inapplicable to Plaintiffs' claim for violation of the ITPA as the release of information was for internal administrative purposes. Accordingly, Plaintiffs' ITPA claim fails as a matter of law.

2.      Plaintiffs Failed to Plead the Requisite Intent Necessary to Establish Violation of the ITPA

When he was on the North Carolina Business Court, Judge Albert Diaz held that to state a claim under the ITPA for violation of 75-62(a)(1):

> Plaintiffs must allege three elements to state claims for violation of section 75-62(a)(1) of the NCITPA: (1) Each Defendant must be a "business"; (2) Defendants must communicate or otherwise make available to the general public Plaintiffs' Social Security numbers; and (3) Defendant must act with intent. *See* N.C. Gen. Stat. § 75-62(a)(1) (2007).

*Fisher v. Communication Workers of America*, 2008 NCBC 18, 55, 2008 WL 4754850.

In *Fisher* the North Carolina Business Court held that the plaintiff <u>must</u> plead that the defendant acted with intent. *Id*. (emphasis added). While the ITPA does not define "intent" or "intentionally communicate," it should be noted that North Carolina Appellate Courts have held that statutes like the ITPA which impose penalties are to be "strictly construed in favor of the one against whom the penalty is imposed and are never to be extended by construction." *Daily E. Press, Inc. v. N.C. Dept. of Crime Control & Pub. Safety*, 195 N.C. App. 288, 293, 671 S.E.2d 587, 590 (N.C. App. 2009) (quoting *Joint Venture v. City of Winston–Salem,* 54 N.C. App. 202, 205, 282 S.E.2d 509, 511 (1981)); *Ivey v. Little*, 403 S.E.2d 914, 923 (N.C. App. 1991).

The United States Bankruptcy Court for the Eastern District of Virginia, in *Maple v. Colonial Orthopedics, Inc*., 434 B. R. 363 (Bankr. E.D. Va. 2010), addressing a potential violation of Virginia's Identity Theft Protection Act noted the substantial similarities between Virginia's Personal Information Privacy Act ("VPIPA") and North Carolina's ITPA and held that both laws provided that the defendant had to "intentionally communicate" the personal information before liability would attach. *Id*. In *Maple*, a law firm had filed documents with the Court's publically accessible filing system containing social security numbers. The Court held that by making the filing, the law firm intended to communicate its contents to the Court, the trustee appointed to the case, and general public. The opposite conclusion must be reached in this case as Schletter did not intend to publish documents to the general public. *Id*. As Plaintiffs' allege in their Complaint,

Schletter was duped into disclosing social security numbers to a third party cyber-criminal. (Amended Compl. ¶ 2.)

Moreover, as discussed above, Section (b)(2) of the ITPA excludes from being a violation of the ITPA instances where social security numbers are disclosed for internal verification or administrative purposes. This logically means that any disclosure which results by way of an intended internal disclosure, such as is the case here, is not actionable under the ITPA. To conclude otherwise would render Section (b)(2) without meaning.

Accordingly, Schletter did not have the requisite intent necessary to violate the Act. Finding that Schletter "intentionally communicated" Plaintiffs' personal information in this case would be akin to finding Schletter intentionally communicated social security numbers because they were stolen from the company's file cabinets by burglars acting under the cover of night.

**F.** **Plaintiffs' Claim for Violation of North Carolina's Unfair and Deceptive Trade Practices Act Fails as a Matter of Law**

In order to establish a violation of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTP") (N.C.G.S. § 75-1.1), a plaintiff must show: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to plaintiffs. "A practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious." *Marshall v. Miller*, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981). Despite its somewhat expansive language the Act does not cover every dispute and clearly does not apply to the facts plead in this case.

Plaintiffs' base their UDTP claim on Schletter's alleged violation of North Carolina's Identity Theft Protection Act, by disclosing employee social security numbers as part of a phishing scam, and for not imposing reasonable security measures. (Amended Compl. ¶¶ 160-161).

1.    The Conduct Supporting Plaintiffs' UDTP Claim is Not In or Affecting

<u>Commerce</u>

The North Carolina Supreme Court has held that "before a practice can be declared unfair or deceptive within the meaning of the UDTP, it must be determined that the practice or conduct complained of was taken within the context of trade or commerce." *Johnson v. Phoenix Mutual Life Ins. Co*., 300 N.C. 247, 261 (1980), *overruled on other grounds, Myers & Chapman, Inc. v. Thomas G. Evans, Inc.,* 323 N.C. 559, 374 S.E.2d 385 (1988). "If they are not, then the statute is of no impact, and our inquiry is at an end." *Id*. "The use of the word 'trade' interchangeably with 'commerce' indicates that this section contemplated a narrower definition of commerce which would comprehend an exchange of same kind." *Id*. "[T]he fundamental purpose of [the UDTPA] is to protect the consuming public." *Prince v. Wright*, 141 N.C. App. 262, 268-269, 541 S.E.2d 191, 196-197 (2000). As held by the North Carolina Court of Appeals, the proper inquiry is whether the defendant's allegedly deceptive acts affected commerce. *J. M. Westall & Co. Inc. v. Windswept View of Asheville, Inc*., 97 N.C. App. 71, 75, 387 S.E.2d 67, 69 (1990). The determination of whether an act or practice is in or affecting commerce is one of law. *Id.*

In this case there was no exchange and the disclosure at issue did not affect commerce. Plaintiffs have not alleged that Schletter, a victim itself, has done anything unfair or deceptive much less anything that that would affect commerce.

In *Durling v. King,* an employer allegedly tried to prevent its employees from discovering the amount of commissions they were owed and then improperly retained the commissions. *Durling v. King,* 146 N.C. App. 483, 485, 554 S.E.2d 1, 2 (2001). The North Carolina Court of Appeals, in dismissing the plaintiff's UDTP claim, held that the employer's conduct was not "in an affecting commerce" as there was no evidence that the employer's actions "had any impact

beyond the parties' employment relationship" or that "defendant's behavior was in or affecting commerce." *Id*. at 489. Such is the case here.

In *Wilson v. Blue Ridge Electric Membership Corp*., 157 N.C. App. 355, 578 S.E.2d 692 (2003) the North Carolina Court of Appeals affirmed the trial court's Rule 12(b)(6) dismissal of a UDTP claim brought by an employee against his former employer because the employer's conduct as alleged in the Complaint did not establish an act in or affecting commerce. *Id*. The plaintiff in *Wilson* alleged that the defendant-employee sought to conceal its management and service deficiencies by altering its by-laws to prohibit board memberships by former employees. *Id* at 356, 578 S.E.2d at 693. In finding that the employer's actions were not in or affecting commerce, the Appeals Court held that matters of internal corporate management do not effect commerce for purposes of the UDTP. *Id* at 358, 578 S.E.2d at 694. The same reasoning applies here.

Similar to this lawsuit, in the recent case of *Winter v. Suddenlink*, LEXIS 2839 (Bankr. E.D.N.C. Aug. 26, 2015), the federal court dismissed plaintiff's UDTP claim pursuant to Rule 12(b)(6) under circumstances substantially similar to those in this case. *Id*. In *Winter*, the defendant filed a proof of claim with the Court containing plaintiffs' social security numbers and other personal information. The Court held that the publication of the personal information was not for the purpose of selling or marketing anything and therefore could not be considered as occurring in or affecting commerce. *Id*. Such is the case here where Schletter only collected the personal information because it was required to do so by law and there was no commercial purpose related to the disclosure.

As outlined above, Plaintiffs have not alleged that Schletter, a victim itself, has done anything unfair or deceptive much less anything unfair or deceptive that that would affect commerce.

2.      Plaintiffs' UDTP Claim Fails to the Extent it Relies Upon Schletter's
Violation of the ITPA

Plaintiffs allege that Schletter's violation of the ITPA constitutes an unfair and deceptive trade practice. (Amended Compl. ¶¶ 161-162.) Plaintiffs' UDTP claim fails to the extent it relies on Schletter's violation of the ITPA as Plaintiff's ITPA claim fails for the reasons set forth in section *E supra*.

3.      Plaintiffs' UDTP Claim Fails as the UDTP Does Not Apply to Employment or
Contract Disputes

Plaintiffs' UDTP claim also fails as the UDTP does not apply to employment disputes. *Buie v. Daniel Int'l Corp*., 56 N.C. App. 554, 289 S.E.2d 118, *cert. denied*, 305 N.C. App. 756, 292 S.E.2d 574 (1982) (unlike buyer-seller relationships, the employer-employee relationships do not fall within the intended scope of this section); *American Marble Corp. v. Crawford*, 84 N.C. App. 86, 351, S.E.2d 848, *cert. denied*, 319 N.C. 464, 356 S.E.2d 1 (1987); *Liggett Group, Inc. v. Sunas*, 113 N.C. App. 19, 437 S.E.2d 674 (1993); *Freeman v. Duke Power Co*., - F. Supp. 2d -, 2003 U.S. Dist. LEXIS 14432 (M.D.N.C. Aug. 15, 2003).

Moreover, the UDTP does not apply to contract claims. *See Bartolomeo v. S.B. Thomas, Inc.,* 889 F.2d 530 (4th Cir. 1989) (a breach of contract absent substantial aggravating circumstances does not violate the UDTP); *Baldine v. Furniture Comfort Corp*., 956 F. Supp. 580 (M.D.N.C. 1996) (a breach of contract absent aggravating circumstances such as an intentional misappropriation made to deceive does not constitute violation of UDTP). Plaintiffs' Complaint alleges the parties entered into an implied contract and the parties' at-will employment relationship constitutes a contractual relationship. Plaintiffs' Amended Complaint does not allege a misappropriation by Schletter, an effort to deceive by Schletter or any other aggravating circumstances which would subject a contract claim to being a violation of the Act.

Accordingly, Plaintiffs' UDTP claim should be dismissed as it constitutes an employment dispute and alleges a breach of contract neither of which fall within the scope of the UDTP.

## IV.  CONCLUSION

For the reasons stated herein and in Defendant's Motion to Dismiss, Defendant Schletter, Inc. respectfully requests that this honorable Court grant Defendant's Motion dismissing Plaintiffs' Amended Complaint and each of its causes of action stated therein with prejudice. This the 25th day of May 2017.

Respectfully submitted,

/s/J. Michael Honeycutt
J. Michael Honeycutt
NC State Bar No. 33437
**FISHER & PHILLIPS LLP**
227 West Trade Street, Suite 2020
Charlotte, North Carolina 28202
Telephone:  (704) 334-4565
Fax:  (704) 334-9774
E-mail:  jhoneycutt@fisherphillips.com
*Attorney for Defendant*

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL ACTION NO. 1:17-CV-00001-MR-DLH**

| | |
|---|---|
| BRYAN CURRY, TERRAN BROOKS, JERMAINE WILLIS, and BRIAN HOPPER on behalf of themselves and all others similarly situated | ) ) ) ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| SCHLETTER INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

## CERTIFICATE OF SERVICE

I hereby certify that on May 25, 2017, the foregoing **DEFENDANT SCHLETTER INC.'S MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT** was filed electronically with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

Jean Sutton Martin
LAW OFFICE OF JEAN
SUTTON MARTIN PLLC
2018 Eastwood Road, Suite 225
Wilmington, NC 28403
jean@jsmlawoffice.com

John A. Yanchunis
MORGAN & MORGAN
COMPLEX LITIGATION GROUP
201 N. Franklin Street, 7th Floor
Tampa, FL 33602
jyanchunis@ForThePeople.com

Respectfully submitted,

/s/J. Michael Honeycutt
J. Michael Honeycutt
**FISHER & PHILLIPS LLP**
227 West Trade Street, Suite 2020
Charlotte, North Carolina 28202
*Attorney for Defendant*